MEMORANDUM *
Carolyn Dye, the bankruptcy trustee for Flashcom, appeals the bankruptcy court’s judgment and sanctions imposed on her attorney and her personally for violation of Federal Rule of Bankruptcy Procedure 9011. We affirm.
The Trustee seeks to recover $9 million from the VC Funds and their employees (Defendants) under the theory that Flash-corn’s payment to Andra for her common stock, or agreement to make that payment, was a fraudulent transfer pursuant to 11 *691 U.S.C. § 548 and that the payment was a “preference” under § 547.
1. To recover the payment as a preference, the Trustee must show among other things that (1) Flashcom was insolvent at time of the payment, § 547(b)(3), and (2) that the Defendants are “entities] for whose benefit such transfer was made” under § 550(a)(1). The bankruptcy court found at trial that Flashcom was solvent, which is not surprising because contemporaneous arm’s length transactions valued Flashcom’s equity at roughly $400 million. The court also found that the transfer was not made to benefit Defendants under § 550.
The Trustee contends that § 547(b)(3) was satisfied as a matter of law because when Andra settled with the Trustee she stipulated to the entry of a judgment stating that § 547(b)’s criteria were met. Although we are doubtful of the Trustee’s argument, we need not address it because she does not challenge the bankruptcy court’s § 550 finding. Thus any error with respect to § 547(b) would be harmless. See Fed. R. Bankr.P. 9005; Fed.R.Civ.P. 61. Although the Trustee mentions the issue in her statement of issues and summary of the argument sections, she does not argue the point in the body of the arguments section. This waives the issue. See Martinez-Serrano v. INS, 94 F.3d 1256, 1259 (9th Cir.1996).[1]
Even if we were to reach the merits, we would uphold the bankruptcy court’s § 550 ruling. Section 550(a) requires that “the debtor must have been motivated by an intent to benefit the individual or entity from whom the trustee seeks to recover. It is not enough that an entity benefit from the transfer; the transfer must have been made for his benefit.” Danning v. Miller (In re Bullion Reserve of N. Am.), 922 F.2d 544, 547 (9th Cir.1991) (internal quotation and citation omitted). The bankruptcy court found that Flashcom did not intend to benefit the Defendants. We review for clear error. See Boyer v. Belavilas, 474 F.3d 375, 377 (7th Cir.2007). The bankruptcy court first observed that any obligation of Defendants to Andra had been extinguished by the time of the transfer. More important, it concluded that Andra’s common stock was substantially equivalent to the new Series B shares. This meant that the VC Funds agreement to buy Andra’s shares at a 15% discount compared to the price for the Series B shares was advantageous for the VC Funds. Thus the court found that the only effect of Flashcom buying Andra’s shares instead of the VC Funds doing so was that the Funds paid more for the Flashcom shares they purchased in February 2000 than they would have under the original agreement.
The court’s finding is not illogical, implausible, or without support in the record and therefore is not clearly erroneous. *692 See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir.2009) (en banc). The court correctly found that the new Series B shares and Andra’s common shares were very similar, and would be identical after an IPO. While the Series B shares offered some limited benefits not given to common shares in the event that Flashcom was purchased for less- than $400 million or in the highly unlikely event of a solvent liquidation, it was not erroneous for the court to conclude that the 15% discount the VC Funds had negotiated was a favorable price. Therefore, if the VC Funds did not want to use the discount themselves, other investors would have been willing to buy Andra’s common shares at this price in the “Unit Purchase,” leaving the VC Funds no obligation. Flashcom cannot have intended to benefit the VC Funds by relieving them of what was in essence an asset.[2]
2. The bankruptcy court granted summary judgment for Defendants on the Trustee’s constructive fraudulent transfer claim under § 548(a)(1)(B)© because Flashcom received “reasonably equivalent value.” A debtor receives reasonably equivalent value if there is no negative net effect on the estate. See Frontier Bank v. Brown (In re N. Merch., Inc.), 371 F.3d 1056, 1059 (9th Cir.2004). We examine the net effect of an integrated transaction as a whole and do not formalistically look at only some part of it. See id.
We conclude that even viewing the evidence in the light most favorable to the Trustee, Flashcom’s repurchase of Andra’s shares must be analyzed along with the Series B offering, the net effect of which was positive — $75 million of new funds. The undisputed evidence showed the new equity sale and the repurchase were interdependent. First, it was Flashcom’s investment banker who convinced Flashcom to simplify the offering by issuing an additional $9 million of new Series B shares and using the proceeds to retire Andra’s shares. This plan yielded Flashcom the exact same amount of new funds" on net as the Unit Purchase, but allowed it to sell only one security, the Series B shares, instead of marketing both Andra’s common shares and the new Series B shares. Second, the arm’s length outside investors explicitly conditioned their purchase of the Series B shares on the release of Andra’s legal claims against Flashcom, which in turn depended on Flashcom’s repurchase of her shares.
The Trustee maintains that there were actually two separate transactions here: (1) the VC Funds foist a losing contract on Flashcom and (2) Flashcom independently raises new equity. We do not, however, find the Trustee’s evidence sufficient for a reasonable trier of fact to conclude that the apparently interdependent transactions should be analyzed separately. The facts of this case closely parallel Official Comm. of Unsecured Creditors of Phar-Mor, Inc. v. Action Indus., Inc. (In re Phar-Mor, Inc. Sec. Litig.), 185 B.R. 497, 504 (W.D.Pa.1995). That court granted summary judgment for the defendants, rejecting the same argument that the Trustee makes here that outside investors would have purchased new equity even without the buyback. It concluded that although the plaintiff “would have us ignore the express provisions of the stock' *693 purchase agreement^] ... [w]e will not do so.” Id.[3] The same is true here. The grant of summary judgment was appropriate.
In addition, we conclude that any error in granting summary judgment for Defendants was harmless because, as with the preference claim, the Trustee cannot recover under § 548 unless she shows Defendants met § 550(a). The § 550 analysis is very similar to the one discussed above. The only difference is that at the time Flashcom agreed to buy Andra’s shares, Defendants’ contract with Andra was still extant. Nevertheless we still conclude that the Defendants do not satisfy § 550(a)(1) because, as discussed, Flash-com did not intend to benefit the VC Funds by taking on what was an asset for the Funds.
3. The bankruptcy court sanctioned Dye, her counsel, David Weinstein, and his firm for bringing a motion in li-mine seeking to prevent Defendants from contesting § 547(b) because of the stipulated judgment. This theory had already been rejected four times. At pretrial conference, the court warned that “[Plaintiffs] can bring whatever motion they want [on this question].... And if Rule 11 sanctions are appropriate, then they may be imposed.” Dye and her counsel nevertheless pushed on, bringing the motion in limine. The bankruptcy court found the motion frivolously sought relief that was contrary to law of the case without citing a change in the law or the facts, and that the motion was brought with an improper purpose. The court sanctioned Dye, Weinstein, and his firm jointly $60,000.
The bankruptcy court did not abuse its discretion. We have frequently upheld sanctions for filing motions that duplicate one that was previously denied. See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 438-39 (9th Cir.1992); Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass’n of N. Cal., 835 F.2d 1275, 1281 (9th Cir.1988). Dye and Weinstein contend that the bankruptcy court erred in finding their motion contrary to law of the case because a denial of summary judgment cannot establish law of the case. We disagree: a court’s decisions on purely legal issues, like the interpretation of § 547 and § 550 at issue here, establish law of the case, even in a denial of summary judgment. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (stating that law of the case applies “when a court decides upon a rule of law”) (internal quotation and citation omitted). It was not improper for Dye and Weinstein to seek reconsideration of the ruling nor to seek interlocutory appeal and reconsideration of the denial thereof, as they did. After that, however, trying to litigate the issue again without a change in the law or facts was frivolous.
The bankruptcy court also found an intent to injure Defendants because Dye and Weinstein knew that their filing would force Defendants to defend, yet again, their right to litigate the § 547 question. Dye and Weinstein were warned by the court concerning sanctions. In light of this, finding intent to injure was not illogical, implausible, or without support in the record.
We also do not find the decision to award $60,000 an abuse of discretion. The bankruptcy court found that defendants *694 had reasonably expended $97,000 responding to the motion in limine and bringing sanctions. ' Rule 9011 specifically authorizes the award of fees for bringing sanctions. Fed. R. Bankr.P. 9011(c)(1)(A). The court nevertheless concluded that $60,000 was sufficient to deter repetition of such vexatious litigation by Dye and Wein-stein and “others similarly situated.” Dye and Weinstein contend that $60,000 still exceeds Defendants’ reasonable fees. Even if the bankruptcy court were confined to considering solely the Defendants’ fees, however, we find $60,000 to have been reasonable. It was also proper to defer considering sanctions, at Dye’s own request, until after trial. This did not make awarding sanctions at that later date punitive.[4]
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. We briefly address the Trustee's arguments about errors in the solvency trial because such errors might affect her state law claim. Those arguments are, however, without merit. It was appropriate for the judge, in a bench trial, to defer consideration of the Daubert motion until after the testimony was given and the judge gave well reasoned explanations for admitting that testimony. The Trustee relies on Estate of Barabin v. AstenJohnson, Inc., which is plainly inapposite. See 740 F.3d 457, 464 (9th Cir.2014).
Similarly, the bankruptcy judge correctly determined that Flashcom should be valued as a going concern because it was not on its deathbed, as shown by the fact that it had just raised $84 million in equity from arm’s length parties, had recently received an unqualified audit, and was easily accessing credit markets. See Wolkowitz v. Am. Research Corp. (In re DAK Indus., Inc.), 170 F.3d 1197, 1199 (9th Cir.1999).

. The Trustee points out that in denying summary judgment to Defendants on the preference issue in 2004, the bankruptcy court found that drawing all reasonable inferences for the Trustee, Defendants were benefitted parties under § 550, Insofar as the Trustee asks us to rely on this finding, she ignores the posture of the order. When the Trustee then moved for summary judgment on § 550, the bankruptcy court denied it, finding that there were material issues of disputed facts.

. The Trustee's only evidence suggesting that there are separate transactions is that the VC Funds had previously agreed to buy Andra's shares, but this is not enough, It would be speculative to conclude on this evidence that the VC Funds induced third parties to create the appearance of an integrated transaction to cover up the Funds having constructively defrauded Flashcom. See LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1136 (9th Cir.2009).

. Dye’s argument that she was not on notice that she would be personally held responsible is without merit. "The Bankruptcy Code forbids reimbursing trustees for expenses incurred in actions not ‘reasonably likely to benefit the debtor’s estate,’ ” including sanc-tionable litigation conduct. See Maxwell v. KPMG LLP, 520 F.3d 713, 718-719 (7th Cir.2008) (quoting 11 U.S.C. § 330(a)(4)(A)(ii)(I)). It was thus clear that the sanctions motion ran against her personally.